UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CHRISTINA SULLIVAN, a single person,<br><br>    Plaintiff,<br><br>    v.<br><br>DOLLAR TREE STORES, INC., a Virginia Corporation, doing business in Washington,<br><br>    Defendant. | NO. CV-07-5020-EFS<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

Before the Court, without oral argument, are Plaintiff Christina Sullivan's Motion for Summary Judgment (Ct. Rec. 35) and Defendant Dollar Tree Stores, Inc.'s Motion for Summary Judgment (Ct. Rec. 40). After reviewing the submitted material and relevant authority,[1] the Court is fully informed and denies Plaintiff's motion and grants Defendant's motion. The reasons for the Court's Order are set forth below.

---

[1] The parties requested oral argument on these motions but, after review, the Court finds oral argument is not necessary. LR 7.1(h)(3).

ORDER ~ 1

## I. Background[2]

Factory 2-U Stores, Inc. ("Factory 2-U"), a retail store that primarily sells discount clothing, employed Plaintiff as a store manager from November 2002 until September 2004. (Ct. Recs. 44-2, Ex. A; 49 at 3-4; 25-2 at 8.) In September 2004, Factory 2-U was in the middle of a Chapter 11 bankruptcy in the United States Bankruptcy Court for the District of Delaware. (Ct. Rec. 43 at 2.)

During the bankruptcy proceedings, Factory 2-U agreed to assign the leasehold interests in its Pasco store to Defendant. (Ct. Rec. 91 at 2.) On September 24, 2004, United States Bankruptcy Judge Peter J. Walsh approved the lease assignment. (Ct. Rec. 43.) Besides the lease, Defendant did not purchase any other Factory 2-U assets; all of Factory 2-U's remaining assets were purchased by others. *Id.*

Plaintiff filled out an employment application with Defendant on September 19, 2004. (Ct. Rec. 91 at 3.) Plaintiff applied for work with Defendant because Factory 2-U was closing its Pasco store. *Id.* Defendant hired Plaintiff as an assistant manager at the Pasco store, and she began work on or about October 3, 2004. *Id.*

During October 2004, Defendant hired a construction crew to remodel the store's infrastructure in preparation for opening the new retail space. (Ct. Recs. 49 at 3; 50 at 2.) Because the Pasco store was closed for renovation, Plaintiff was initially sent to the Richland Dollar Tree Store to undergo training on Defendant's retail business, policies, and workplace rules. (Ct. Rec. 50 at 3.)

---

[2]Unless stated otherwise, the following facts are undisputed.

ORDER * 2


Defendant's Pasco store opened for business on October 30, 2004. (Ct. Rec. 43 at 2.) Plaintiff worked full-time for Defendant from October 3, 2004, until May 24, 2005. (Ct. Rec. 91 at 3.) In early May, Plaintiff requested paid leave time to care for her sick mother. *Id.* Defendant granted Plaintiff's request. *Id.* On or about May 25, 2005, Plaintiff either resigned or was terminated. (Ct. Rec. 55 at 18.)[3] Plaintiff complained about her situation to the U.S. Department of Labor ("DOL"). (Ct. Rec. 91 at 2.)

## II. Discussion

### A. Summary Judgment Standard

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Once a party has moved for summary judgment, the opposing party must point to specific facts establishing that there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). If the nonmoving party fails to make such a showing for any of the elements essential to its case for which it bears the burden of proof, the trial court should grant the summary judgment motion. *Id.* at 322. "When the moving party has carried its burden of [showing that it is entitled to judgment as a matter of law], its opponent must do more than show that there is some metaphysical doubt as to material facts. In the language of [Rule 56], the nonmoving party

---

[3] This fact is disputed by the parties. Plaintiff claims she was terminated; Defendant claims she resigned.

ORDER * 3

must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986) (citations omitted) (emphasis in original opinion).

When considering a motion for summary judgment, a court should not weigh the evidence or assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). This does not mean that a court will accept as true assertions made by the non-moving party that are flatly contradicted by the record. *See Scott v. Harris,* 127 S. Ct. 1769, 1776 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

**B. Department of Labor Narrative's Admissibility**

    **1. Authenticity**

Defendant argues that the DOL investigative narrative submitted by Plaintiff as an exhibit has not been properly authenticated. (Ct. Rec. 56 at 6.) Plaintiff responds that the DOL narrative is properly authenticated under Federal Rules of Evidence 901 and 902 because it is a public document produced in response to a Freedom of Information Act ("FOIA") request. (Ct. Rec. 83 at 7.)

Federal Rule of Evidence 901 states, in pertinent part:

> (a) General provision. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

ORDER ~ 4

>    (b) Illustrations. By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:
>
>        (7) Public records or reports. Evidence that a writing authorized by law to be recorded or filed and in fact recorded or filed in a public office, or a purported public record, report, statement, or data compilation, in any form, is from the public office where items of this nature are kept.

FED. R. EVID. 901 (2008).

Here, Defendant has authentication concerns because, at first glance, the DOL narrative appears to be nothing more than an unsigned letter not drafted on any official letterhead. (Ct. Rec. 25-2.) In her reply, however, Plaintiff states that the DOL narrative's cover page was inadvertently omitted when originally filed - the cover page contains both DOL letterhead and a signature from a FOIA disclosure officer. (Ct. Rec. 47-2.) The DOL narrative, combined with the FOIA request cover page, satisfies the authentication requirements set forth in Rule 901 and 902.

**2. Admissibility**

Defendant also argues that the DOL narrative is inadmissible hearsay that lacks trustworthiness. (Ct. Rec. 56 at 8.) Plaintiff responds that the DOL narrative is properly admissible under the public record hearsay exception. (Ct. Rec. 83 at 2.)

Federal Rule of Evidence 803 states, in pertinent part:

>    The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
>        (8) Public records and reports. Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth . . . (C) in civil

ORDER \* 5

> actions . . . factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

FED. R. EVID. 803(8) (2008). A trial court is entitled to presume that a public report is authentic and trustworthy. *Gilbrook v. City of Westminster*, 177 F.3d 839, 858 (9th Cir. 1999); *Johnson v. City of Pleasanton*, 982 F.2d 350, 352 (9th Cir. 1992). "The burden of establishing otherwise falls on the opponent of the evidence, who must come 'forward with enough negative factors to persuade a court that a report should not be admitted.'" *Gilbrook*, 177 F.3d at 858 (citations omitted). This burden is premised on the assumption that public officials perform their duties properly without motive or interest other than to submit accurate and fair reports. *Johnson*, 982 F.2d at 352-53. If a court does find a report to be untrustworthy, then it has an obligation to exclude the entire report or any portions thereof that are determined to be untrustworthy. *See Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 167 (1988).

Here, while the DOL's narrative is skeletally admissible under Rule 803(8) as a public record, its legal conclusions and factual findings pertaining to Defendant's successor in interest status are not trustworthy and will not be considered by the Court.

The DOL's narrative stated the following with respect to Defendant's successor in interest status:

> Dollar Tree Stores, Inc, [sic] a covered employer, is considered a "successor in interest" to the covered employer Factory 2-U Stores, Inc. The circumstances of the transition that occurred between the two companies coincide with six out of eight factors that determine a "successor in interest."

ORDER * 6

> These factors are: 1) the same retail business operation continued; 2) the same rental space was used; 3) most of the same personnel continued to work; 4) the store continued to employ retail salespeople who worked during regular hours; 5) the same supervisory personnel continued with the opening of the Dollar Tree store; and 6) the products continued to include clothing along with other personal, gift and household items (Exhibit E-6).

(Ct. Rec. 25-2 at 8-9.) As an initial matter, the DOL's conclusion that Defendant is a successor in interest is a legal conclusion, and "Rule 803(8)(C) does not provide for the admissibility of legal conclusions contained within an otherwise admissible public report." *Hines v. Brandon Steel Decks, Inc.*, 886 F.2d 299, 302 (11th Cir. 1989).

Moreover, there are several problems with the DOL's factual findings. First, Rule 803(8)(C) requires an investigation, and as Defendant correctly points out, the DOL's narrative does not reflect the product of a proper investigation - it neither lists witnesses interviewed during the alleged investigation nor explicitly identifies the exhibits relied upon in forming its opinion. Second, it does not appear that Defendant ever had an opportunity to formally challenge the DOL's findings and conclusions. Third, several of DOL's factual findings relating to Defendant's successor in interest status are flatly contradicted by the record.

For example, the DOL stated that "the same retail business operation continued." (Ct. Rec. 25-2 at 9.) This is not correct. The record demonstrates that Factory 2-U filed for bankruptcy, closed its doors, and sold its assets to entities other than Defendant. (Ct. Recs. 50 at 2; 49 at 2.) Defendant did not obtain any rights or interest in Factory 2-U's business, stock, merchandise, files, records, or inventory; it acquired only the leases to several former Factory 2-U stores, including

ORDER ~ 7

the vacant Pasco store.  (Ct. Rec. 49 at 2.)  In fact, the store space was closed for over a month while contractors converted the store from its old design into a new retail configuration.  (Ct. Rec. 37 at 2.)  The store was stocked with Defendant's own retail merchandise such as pre-packaged food, household goods, cleaning chemicals, greeting cards, party supplies, stationary, health and beauty aids, toys, and occasionally clothing items.  This merchandise is separate than and distinct from Factory 2-U's merchandise, which consists primarily of clothing. (Ct. Recs. 49 at 3-4; 25-2 at 8.)  These events illustrate that, in fact, the same retail business operation did not continue.

Another example of inaccuracy is the DOL's statement that "most of the same personnel continued to work."  (Ct. Rec. 25-2 at 9.)  This is also not correct.  The record demonstrates that Defendant hired 15-25 clerks for its Pasco store, and only two, including Plaintiff, were former Factory 2-U employees.  (Ct. Rec. 50 at 4.)

A final example of inaccuracy is the DOL's statement that "during the summer of 2004, Dollar Tree, Inc. started the process of taking over the Factory 2-U store in Pasco . . . ."  (Ct. Rec. 25-2 at 9.)  Again, this is not correct.  The record demonstrates that there never was a "take-over"; rather, Defendant acquired only the lease to a now vacant building from the bankruptcy proceedings.  (Ct. Recs. 43-3;  49 at 2.)

While there are other inaccuracies in the DOL's narrative, these three examples sufficiently illustrate that the DOL's findings on Defendant's successor in interest status are not trustworthy and will not be considered.

ORDER * 8

**C. Plaintiff's Eligibility Under the Family Medical Leave Act ("FMLA")**

Defendant argues Plaintiff is not an eligible employee under the FMLA because Defendant is not a successor in interest to Factory 2-U. (Ct. Rec. 42 at 4.) Plaintiff argues, with almost no analysis, that Defendant is a successor in interest. (Ct. Rec. 36 at 6.)

The FMLA provides job security by permitting eligible employees to take unpaid leave for up to twelve (12) weeks each year for personal medical reasons, to care for their newborn babies, or to care for family members with serious illnesses. *See* 29 U.S.C. § 2612. An "eligible employee" is one who has been employed "for at least 12 months by the employer with respect to whom leave is requested." 29 U.S.C. § 2611(2)(A)(i). The term "employer" includes "any successor in interest of an employer." 29 U.S.C. § 2611(4)(A)(ii)(II).

It is undisputed that Plaintiff worked full-time for Defendant for eight months before she left/was terminated. (Ct. Rec. 55 at 6.) So in order to qualify as an eligible employee for FMLA purposes, Defendant must be a successor in interest to Plaintiff's former employer, Factory 2-U.[4] Plaintiff bears the burden to demonstrate FMLA eligibility.

---

[4] Very few federal courts have meaningfully and directly addressed this "successor in interest" issue; there are approximately ten district court cases nationwide - only one is in the Ninth Circuit. *See, e.g., Cobain v. Destination Hotels & Resorts,* 2007 U.S. Dist. LEXIS 40077 (E.D. Cal. June 1, 2007). There is only one published circuit court case. *See Cobb v. Contract Transp., Inc.,* 452 F.3d 543 (6th Cir. 2006).

ORDER ~ 9

The Department of Labor sets out eight (8) factors to be considered when determining whether an employer is a "successor in interest":

    (1) Substantial continuity of the same business operations;

    (2) Use of the same plant;

    (3) Continuity of the work force;

    (4) Similarity of jobs and working conditions;

    (5) Similarity of supervisory personnel;

    (6) Similarity in machinery, equipment, and production methods;

    (7) Similarity of products or services; and

    (8) The ability of the predecessor to provide relief.

29 C.F.R. § 825.107.[5] Courts should not rely on any one factor when determining whether an employer is a "successor in interest"; rather, all eight (8) factors should be viewed in their totality. *Id.* Moreover, courts examine these factors from the plaintiff's viewpoint "at or near the time of the change in employer," and ask "whether an employee who has been retained will understandably view his or her job situation as essentially unaltered." *Vanderhoof v. Life Extension Inst.,* 988 F. Supp. 507, 513 n.2 (D.N.J. 1997).[6]

---

[5] While these regulations are not binding, they do provide some persuasive guidance in answering the successorship question. *See Lombardo v. Air Prods. & Chems., Inc.,* 2006 U.S. Dist. LEXIS 46077 (E.D. Pa. July 7, 2006).

[6] In *Vanderhoof,* the district court's "employee viewpoint focus" is based on the Supreme Court's successor liability analysis in *Fall River Dyeing & Finishing Corp. v. NLRB,* 482 U.S. 27, 43 (1987), a national

ORDER * 10

1    Finally, successor liability's appropriateness turns on whether
2 imposing such liability would be equitable. *Cobb,* 452 F.3d at 554
3 (citations omitted). This equitable determination requires courts to
4 balance 1) the defendant-employer's interests, 2) the plaintiff-
5 employee's interests, and 3) the goals of federal policy, in light of a
6 case's particular facts. *Id.*

### 1. Substantial Continuity in Business Operations

Defendant asserts that the 90-day "dark period" when the leased space was closed and undergoing remodeling is conclusive evidence that there was no continuity in business operations. (Ct. Rec. 42 at 5.) Plaintiff argues, without analysis, that "Dollar Tree Stores continued in the same retail business operation as Factory 2-U." (Ct. Rec. 38 at 4.) Plaintiff's conclusory statement lacks merit. It is undisputed that Factory 2-U went bankrupt and closed its doors in the fall of 2004. (Ct. Rec. 50 at 2; Ct. Rec. 49 at 2.) Through bankruptcy proceedings, Defendant acquired only the lease - from a third party - to a vacant building. (Ct. Rec. 49 at 2.) The building space underwent a month of renovations as Defendant prepared to open a new and distinct retail operation.

The "dark period" while the store was closed and being renovated into a new and distinct retail operation is distinguishable from instances where federal courts have concluded substantial continuity in business operations exists. *See, e.g., Cobain*, 2007 U.S. Dist. LEXIS

---

labor relations case, because the relevant factors under the FMLA and the National Labor Relations Act are similar. This Court finds this analysis persuasive.

ORDER * 11

40077 at *51 (finding continuity when a new resort manager took over a Lake Tahoe resort and there was no break in resort operations and the resort continued to provide the same types of services to clients); *Vanderhoof,* 988 F. Supp. at 513 (finding continuity when a health care provider took over a clinic's equipment, inventory, business contracts, medical records, and patients, there was no break in clinic operations, and the clinic continued to provide the same types of services to patients); *Rhoads v. F.D.I.C.,* 956 F. Supp. 1239, 1254 (D. Md. 1997), *reversed in part on other grounds by Rhoads v. F.D.I.C.,* 257 F.3d 373 (4th Cir. 2001) (finding continuity when a government entity took over a private bank and it continued to function as a financial institution even though its mortgage servicing operation, a principal service, was sold). Here, there is no continuity because Factory 2-U's business operation ceased to exist and was replaced entirely by Defendant's business operation.

**2. Use of Same Plant**

Defendant impliedly argues that it did not use the "same plant" because it merely obtained the lease on a now vacant building. (Ct. Rec. 42 at 5.) Plaintiff argues, again without analysis, that Defendant qualifies under this factor because it used the same rental space as Factory 2-U. (Ct. Rec. 38 at 4.) The Court finds that, even though the building's shell remained, Defendant did not use the "same plant" because it renovated the space and opened a new and distinct retail operation with a new interior and new merchandise. These facts are distinguishable from *Cobain*, where the district court concluded that a multi-million dollar resort renovation still constituted use of the

"same plant" because the resort remained a resort. 2007 U.S. Dist. LEXIS 40077 at *52-53. Here, nothing remained of Factory 2-U or the merchandise it sold.

### 3. Work Force Continuity

Defendant argues that there was no work force continuity because only two (2) of the 15-25 Pasco store employees were former Factory 2-U employees. (Ct. Rec. 56 at 12.) Plaintiff reiterates, without analysis, the DOL's generalized statement that "most of the same personnel continued to work when Dollar Tree took Factory 2-U over." (Ct. Rec. 38 at 4.) Of the few federal courts to analyze this issue, several agree that "minor personnel reshuffling" does not mean that the work force lacked continuity. *See Carlson v. Rent-A-Center, Inc.,* 237 F. Supp. 2d 114, 126 (D. Me. 2003).

Here, however, there was more than "minor personnel reshuffling." As stated, when Defendant officially opened its Pasco store, only two (2) of the 15-25 associate store clerks were former Factory 2-U employees. (Ct. Rec. 50 at 4.) Plaintiff was one of these two employees and filled out an application in September of 2004 to obtain the position. (Ct. Rec. 91 at 2.) These facts are distinguishable from *Cobain,* where the new resort owner hired the majority of the resort's former employees, 2007 U.S. Dist. LEXIS 40077 at *53; these facts are also distinguishable from *Vanderhoof,* where the new health care provider hired all of the clinic's former employees and merely had them fill out new paperwork. 988 F. Supp. at 513. Because Defendant hired almost an entirely new work force, the Court finds that work force continuity did not exist.

ORDER * 13

**4. Similarity of Jobs and Working Conditions**

Defendant did not submit briefing on this issue. Plaintiff argues, again without analysis, that "the store continued to employ retail sales people who worked during regular store hours. (Ct. Rec. 38 at 4.) Because neither party submitted adequate briefing, including declarations with attachments establishing such factual similarity, the Court cannot properly consider this factor.[7]

**5. Similarity of Supervisory Personnel**

Defendant asserts that the Pasco store opened with long-time Dollar Tree supervisory personnel who had never worked for Factory 2-U. (Ct. Rec. 56 at 12.) Plaintiff reiterates the DOL's finding that "the same supervisory personnel continued with the opening of Dollar Tree Store." (Ct. Rec. 38 at 4.) As discussed, Plaintiff and another woman, Margarita Rivera, were the only two former Factory 2-U employees hired at the Pasco store - both were hired as assistant managers. (Ct. Rec. 50 at 4.) Defendant's store manager and district manager, however, were not former Factory 2-U employees. *Id.* True, a change in upper level management is not enough to tip this factor in favor of an employer unless "such a change in the upper management has a substantial transformation in the basic operations of a facility." *Vanderhoof,* 988 F. Supp. at 514.

But here, there was a substantial transformation in the basic operations of the facility even though Plaintiff and another Factory 2-U employee were hired as assistant managers. Defendant was an entirely new

---

[7]See, however, the Court's discussion under "Similarity of Products or Services."

ORDER * 14

retail store with new policies selling new merchandise. Defendant had no connection whatsoever to Factory 2-U other than it purchased a lease from a third-party for the vacant space where Factory 2-U formerly resided. Thus, the arrival of Defendant's long-time store manager and regional manager affected substantial transformation in the store's operation.

### 6. Similarity in Machinery, Equipment, and Production Methods

This prong is not relevant in a non-manufacturing context and will not be considered. *See Vanderhoof,* 988 F. Supp. at 514.

### 7. Similarity of Products or Services

Defendant argues that its inventory differs from Factory 2-U's inventory. (Ct. Rec. 56 at 13.) Plaintiff contends that Defendant's "products continued to include clothing along with other personal, gift, and household items." (Ct. Rec. 38 at 5.) The record indicates that Factory 2-U is a retail discount clothing store. (Ct. Rec. 25-2 at 8.) Defendant, on the other hand, sells general merchandise items at a single price point - such merchandise includes:

> pre packaged [sic] food, household goods, cleaning chemicals, greeting cards, party supplies, stationary, health and beauty aids, paper products, tools, food, toys, and other items of general merchandise (which includes from time to time [sic] an insubstantial amount of some wearing apparel, i.e., underwear, socks, and baby clothes, etc.) . . . .

(Ct. Rec. 49 at 4.) So even though both Factory 2-U and Defendant operate retail stores, they sell largely different merchandise. These facts are distinguishable from *Cobain*, where the resort's overall services remained the same, 2007 U.S. Dist. LEXIS 40077 at *57; these facts are also distinguishable from *Vanderhoof,* where the clinic offered the same services despite catering to different clientele. 988 F. Supp.

ORDER * 15

at 514.  Here, Defendant opened a different store offering different merchandise.

### 8. Ability of Predecessor to Provide Relief

This factor is not relevant because Plaintiff's request for FMLA leave occurred eight (8) months after she began working for Defendant. *See Cobain,* 2007 U.S. Dist. LEXIS 40077 at *58 (stating that, when a plaintiff has no FMLA claim against the former employer, the predecessor's ability to provide relief is irrelevant) (citations omitted).  Moreover, Plaintiff concedes there is no ability for Factory 2-U to provide relief.  (Ct. Rec. 83 at 9.)

### 9. Balancing the Equities

As stated above, the Court must balance 1) the defendant-employer's interests, 2) the plaintiff-employee's interests, and 3) the goals of federal policy, in light of a case's particular facts.  *Cobb,* 452 F.3d at 554.  The FMLA's broad purposes are:

> (1) to balance the demands of the workplace with the needs of families, to promote the stability and economic security of families, and to promote national interest in preserving family integrity;
>
> (2) to entitle employees to take reasonable leave for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse, or parent who has a serious health condition;
>
> (3) to accomplish the purposes described in paragraphs (1) and (2) in a manner that accommodates the legitimate interests of employers;
>
> (4) to accomplish the purposes described in paragraphs (1) and (2) in a manner that . . . minimizes the potential for employment discrimination . . .; and
>
> (5) to promote the goal of equal employment opportunity for women and men . . . .

ORDER * 16

29 U.S.C. § 2601.

A balance of the equities in light of the FMLA's policies weighs in favor of holding that Defendant is not a successor in interest to Factory 2-U. The Court recognizes that the FMLA is a remedial statute created to address important social issues such as the lack of accommodating employment policies and inadequate job security. *See id.* As a result, remedial statutes should be construed broadly to extend coverage. *Cobb,* 452 F.3d at 559.

After reviewing *Vanderhoof* and *Cobain,* to cases that illustrate FMLA successor liability, the Court concludes that the present matter is distinguishable from those cases and is not a case of successor liability. This is not a case of: a merger or acquisition; a business operation transitioning smoothly from one owner to another, the business left largely undisturbed; purchase, retention, or acquisition of the former company's inventory; retention of former employees; supervisors remaining the same; or selling similar products.

Here, a new and distinct company, with different management, different merchandise, and a largely different work force acquired a bankrupt company's lease from a third-party. Other than acquiring the lease and hiring two former Factory 2-U employees, there is no other connection between Defendant and Factory 2-U with respect to the Pasco store.

Looking at the totality of the circumstances, Plaintiff, at or near the time of change of employer, could not understandably view her job situation as essentially unaltered. *See Vanderhoof,* 988 F.Supp. at 513.

The Court concludes that Defendant is not a successor in interest to Factory 2-U and, therefore, Plaintiff is not an eligible employee under the FMLA.

### III. Conclusion

Accordingly, **IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 35)** is **DENIED**;

2. Defendant's Motion for Summary Judgment **(Ct. Rec. 40)** is **GRANTED**;

3. Judgment shall be entered in Defendant's favor;

4. All pending hearing and trial dates are stricken;

5. All pending motions are denied as moot; and

6. This file shall be closed.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order and to provide copies to counsel.

**DATED** this 10th day of April 2008.

                    S/ Edward F. Shea
                    EDWARD F. SHEA
                United States District Judge

Q:\Civil\2007\5020.MSJ.wpd

ORDER * 18